## In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-2118

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEREMIAH S. BERG,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 10-CR-207—**William C. Griesbach**, *Chief Judge.*

ARGUED NOVEMBER 28, 2012—DECIDED APRIL 9, 2013

Before KANNE, WOOD, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Jeremiah S. Berg ran a cross-border smuggling scheme that traded American arms for Canadian cannabis. Later, he supplied several bags of cocaine to a dealer who unwittingly resold them to a government agent. On July 16, 2010, Berg confessed to both sets of crimes. Berg apparently hoped that his co-operation would win him leniency. Instead, the government took Berg to trial, and a jury convicted him. Berg now appeals, arguing that his two sets of crimes were

improperly tried in one case and that he was denied the opportunity to call an exculpatory witness. We disagree and affirm.

## I. BACKGROUND

Jeremiah S. Berg first came to the attention of law enforcement in March 2008. The federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") was investigating two illegal gun dealers: Catherine and Juan Elizondo. After the ATF executed a search warrant on the Elizondos' house, the Elizondos agreed to help gather evidence about their customers. Berg happened to be one of them. Between April and October 2008, Berg met with the Elizondos and an undercover ATF agent several times. Berg expressed interest in buying more guns, although he and the Elizondos never actually consummated another sale. The Elizondos also linked Berg with two guns that were later recovered by Canadian law enforcement. However, for reasons that are not entirely clear, the ATF did not immediately follow up on Berg's case.

More than a year later, in April 2010, Berg attracted the attention of the Brown County, Wisconsin, Drug Task Force ("WDTF"). An undercover informant, Russell LaRock, arranged to buy cocaine from Roland Peynetsa. Berg, it turns out, was Peynetsa's source—whenever LaRock asked Peynetsa for cocaine, Peynetsa would call Berg, and Berg would supply it. On three different days in April and May 2010, law enforcement observed Berg supply about fifty grams of cocaine to Peynetsa, who

then resold it to LaRock. LaRock was later caught trying to steal $20 in WDTF buy money, and the WDTF terminated their cooperation with him in late May 2010. On June 22, 2010, the WDTF arrested Peynetsa. The following day, they arrested Berg as well.

After his June 23, 2010 arrest, Berg waived his *Miranda* rights and started talking. Berg admitted to being a regular cocaine dealer and to having sold cocaine to Peynetsa. Berg also said that, before moving into the cocaine racket, he had sold high-grade Canadian marijuana. Berg was released after agreeing to cooperate with the WDTF. He later provided some help to WDTF investigators, including participation in a controlled drug buy from one of his suppliers. By July 16, 2010, federal agents at the ATF had become aware of Berg's arrest and arranged for a non-custodial interview. During the interview, Berg explained how he had traded guns for Canadian marijuana in the past. After the interview, Berg agreed to continue working with WDTF. A few weeks later, Berg broke off contact with law enforcement and absconded from his state-law probation. A warrant was issued for his arrest, and he was finally apprehended on September 2, 2010.

On October 13, 2010, a federal grand jury indicted Berg on six counts: conspiracy to distribute marijuana; use of firearms to further a marijuana conspiracy; possession of a firearm by a felon; and three counts of conspiring to distribute cocaine. All of the charges were tried together in this case. At trial, Berg claimed that his confessions were false and that he was innocent of all of the

charges. He had only admitted otherwise, he claimed, because he was afraid of prosecution and wanted the agents to think he would be valuable as a confidential source. The jury disbelieved Berg and convicted him on all six counts. He now appeals, arguing that (1) his gun and marijuana charges should have been severed from his cocaine charges; and, (2) the district court violated his Sixth Amendment rights by failing to call Peynetsa during trial.

## II. ANALYSIS

### A.  Consolidation of Berg's Charges in One Trial

Berg first claims that his marijuana trafficking counts and his cocaine trafficking counts should have been tried separately. Because the jury heard both sets of charges at the same time, Berg argues, it may have inferred he was guilty because he had a propensity to commit crimes and not because of the strength of the evidence. As with any severance claim, this claim necessarily contains two distinct issues. *See United States v. Windom*, 19 F.3d 1190, 1196 (7th Cir. 1994). The first is joinder—whether the two sets of charges had enough in common to be tried in the same case. *Id.* The second is severance—whether, despite being properly joined, the two sets of charges nevertheless should have been tried separately to avoid undue prejudice. *Id.*

Berg did not raise either issue before or during trial. Instead, he raised both for the first time after trial in a motion for a new trial under Federal Rule of

Criminal Procedure 33. As a result, the issues are for-feited.[1] Recognizing this problem, Berg asks us to

---

[1] The Supreme Court has explained that forfeiture and waiver are two different creatures; "forfeiture is the failure to make the timely assertion of a right," while "waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted); *accord Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004). Forfeited errors may still be reviewed for plain error, while waived errors are "extinguish[ed]" and cannot be re-viewed on appeal. *Olano*, 507 U.S. at 733; *accord United States v. Tichenor*, 683 F.3d 358, 363 (7th Cir. 2012). We think that "forfeiture" more accurately describes what happened here. There is no evidence that Berg intentionally relinquished his rights. Furthermore, we frequently apply plain error review to joinder and severance claims not raised before trial. *See, e.g.*, *United States v. Anderson*, 450 F.3d 294, 301 (7th Cir. 2006); *United States v. Febus*, 218 F.3d 784, 797-98 (7th Cir. 2000). Accordingly, we will use the term "forfeiture."

We note, however, that Federal Rule of Criminal Procedure 12(e) technically says that a party "waives" joinder and sever-ance arguments by failing to raise them in a pretrial motion. But that is an odd sort of "waiver," for, unlike true waiver, a "waiver" under Rule 12(e) is excusable for "good cause." *Compare Olano*, 507 U.S. at 733-34, *with* Fed. R. Crim. P. 12(e). In other words, a Rule 12(e) waiver actually functions more like a forfeiture. The Criminal Rules Advisory Committee has also flagged this issue as "a source of considerable confu-sion." Criminal Rules Advisory Committee, *May 2011 Report to Standing Committee, Agenda Action Item—Rule 12*, at 3 *available at* http://www.uscourts.gov/uscourts/

(continued...)

review his arguments for plain error, or, in the alternative, to hold that his trial counsel was unconstitutionally ineffective for failing to raise the arguments. To succeed under plain error review, Berg must show that (1) there was an error; (2) the error was plain; and, (3) the error affected his substantial rights. *See United States v. Doyle*, 693 F.3d 769, 771 (7th Cir. 2012). Alternatively, to show that his counsel was ineffective, Berg must demonstrate that (1) his counsel was objectively unreasonable for not moving to sever the charges; and, (2) Berg was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

*1. Joinder*

Federal Rule of Criminal Procedure 8(a) provides that multiple offenses may be joined "if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." We interpret this rule broadly and "allow liberal joinder in order to enhance judicial efficiency." *United States v. Nettles*, 476 F.3d 508, 516 (7th Cir. 2007). "Further, in assessing whether joinder was proper, we look solely to the face of the indictment and not to the evidence adduced later at

---

[1] (...continued)
RulesAndPolicies/rules/Reports/CR05-2011.pdf (last visited Apr. 3, 2013).

trial." *United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003).

Here, the government argues that the two sets of offenses—three of which related to marijuana trafficking and three of which related to cocaine trafficking—were properly joined because they were "of the same or similar character." (Appellee's Br. at 22.) We agree. The "same or similar character" requirement is a "clear directive to compare the offenses charged for categorical, not evidentiary, similarities." *United States v. Alexander*, 135 F.3d 470, 476 (7th Cir. 1998); *accord United States v. Jackson*, 208 F.3d 633, 638 (7th Cir. 2000). Here, Counts 1-3 of the indictment all related to a scheme to distribute marijuana, and Counts 4-6 all related to a scheme to distribute cocaine. We think that these charges—all of which involved drug dealing—were of the same general category of offense and therefore were "of the same or similar character" to each other. *See Windom*, 19 F.3d at 1196 (possession of heroin with intent to distribute and possession of cocaine with intent to distribute are offenses of "same or similar character"); *cf. United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995) (manufacturing marijuana and distributing drug paraphernalia are of "same or similar character" because both violate the Drug Abuse Prevention and Control Act); *United States v. Fortenberry*, 919 F.2d 923, 926 (5th Cir. 1990) (opinion denying petition for rehearing) (transportation of an undeclared firearm on a commercial airliner and possession of an unregistered firearm are of "same or similar character" because they are both weapons violations).

Berg counters that his two sets of offenses were not of a similar character because (1) they involved different types of drugs; (2) they happened too far apart in time; (3) they involved some non-overlapping evidence; and, (4) one set of offenses involved firearms and the other did not. But Rule 8(a) does not require that joined offenses be "temporally or evidentially related"; all it requires is that they be "of like class." *Alexander*, 135 F.3d at 476; *see also United States v. Gooch*, 665 F.3d 1318, 1335 (D.C. Cir. 2012) ("Rule 8(a) permits the joinder of offenses of the same or similar character, even if they are entirely unrelated to each other" as a factual matter) (internal quotation marks omitted). Here, the fact that both crimes involved drug dealing suffices to make them of like class.

As for the factual differences between the marijuana charges and the cocaine charges, those differences inform whether the charges should have been severed because of undue prejudice (a question we will turn to in a moment). But they do not mean the charges were not of the same or similar character. Thus, Berg's marijuana and cocaine trafficking offenses were properly joined. And, because it was not error for the cases to be joined, there was not plain error either, and Berg's attorney was not ineffective for failing to object to the joinder. *See United States v. Persfull*, 660 F.3d 286, 296 (7th Cir. 2011) (where there was no error, neither an ineffective assistance claim nor a plain error claim will lie).

*2. Severance*

That brings us to our next question: whether, despite being properly joined, the offenses should have been severed to avoid undue prejudice. Federal Rule of Criminal Procedure 14(a) provides that, if the joinder of offenses "appears to prejudice a defendant or the government," the court may "order separate trials of counts" or "provide any other relief that justice requires." That "prejudice" can take many forms, but "whatever the source of the purported prejudice, the defendant bears a heavy burden on appeal when arguing that the prejudice warranted severance." *United States v. Ervin*, 540 F.3d 623, 629 (7th Cir. 2008). Thus, it is not enough merely to show that separate trials might have provided the defendant a better shot at acquittal. *Id.* "Instead, the defendant must establish that the denial of severance actually prejudiced him by preventing the jury from arriving at a reliable judgment as to guilt or innocence." *Id.*

Berg claims that, "if the counts had been severed, [he] may very well have chosen a trial strategy that did not include his taking the stand, and his alleged confession to cocaine distribution would not have been admissible in a guns for marijuana trial, and vice versa." (Appellant's Br. at 21.) But this claim alone does not entitle him to reversal of his conviction. True, joinder can be prejudicial if it improperly coerces a defendant into testifying about a count on which he wishes to remain silent. *See Ervin*, 540 F.3d at 628. But a defendant's "general assertions about the testimony he seeks to offer will not suffice" to win on appeal; "he must proffer specific examples of

the exculpatory testimony that he would give but for the joinder of the counts." *Id.* at 629 (internal quotation marks omitted); *see also Nettles,* 476 F.3d at 516-17 (defendant must make "a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other"). Berg has not done so here. Indeed, he claims that it is "impossible to know whether Mr. Berg would have remained silent or made the decision to testify in either, or both trials," had the trials been severed. (Appellant's Br. at 22.) That "general assertion" is not enough to carry his burden. *Ervin*, 540 F.3d at 629.

Berg also claims that the lack of severance prejudiced him because it may have led the jury to decide the case based on improper evidence. Once again, we are not convinced. To be sure, trying multiple charges at the same time can sometimes be problematic; it runs the risk of producing a verdict based on bad acts and propensity evidence rather than on admissible evidence. *See id.* at 628. But severance is not always the best solution to that problem. Jury instructions can mitigate potential prejudice from trying multiple charges together, *see Nettles,* 476 F.3d at 516, and here, the jury was instructed to consider all of the counts separately, (R. 52 at 16). Moreover, the evidence against Berg was compelling on all counts. Berg twice confessed to dealing Canadian marijuana: once on June 23, 2010, and again in greater detail on July 16, 2010, when he admitted that he got his marijuana by swapping it for illegal guns. Canadian authorities later recovered firearms linked to Berg. Berg was recorded discussing illegal firearms deals on

multiple occasions, and his dealers, the Elizondos, testified against him. As for the cocaine charges, the evidence against him included his June 23 confession and the testimony of LaRock, the undercover informant. Audio and video surveillance showed multiple instances of Peynetsa placing orders for cocaine, Berg meeting with Peynetsa, and Peynetsa delivering cocaine to LaRock, all in quick succession. Given this compelling evidence and the jury's instructions to consider the counts separately, we cannot say that any plain error occurred here.

For the same reason, Berg also cannot show that his counsel was ineffective for failing to move for severance. Under *Strickland v. Washington*'s familiar, two-pronged test for ineffective assistance of counsel, Berg must demonstrate that (1) his counsel's performance was deficient; and, (2) that deficiency resulted in prejudice. 466 U.S. at 687. Here, that means Berg must show that, had his counsel successfully moved for severance, there was a "reasonable probability" that he would have been acquitted. *Rastafari v. Anderson*, 278 F.3d 673, 689 (7th Cir. 2002). Berg cannot make this showing. As discussed, the evidence against Berg was overwhelming. As a result, he cannot satisfy *Strickland*'s second prong, and he therefore cannot show that his counsel was ineffective for failing to move for severance.

## B. Failure to Examine Peynetsa

Berg next claims that the district court should have directly questioned Peynetsa to determine whether he

would testify for Berg's defense. To understand this claim, some further background is in order.

After his arrest, Peynetsa confessed to police and implicated Berg in dealing cocaine. Later, Peynetsa submitted an affidavit claiming that Berg had nothing to do with cocaine trafficking and that Berg only met with Peynetsa to talk about buying marijuana for Berg's personal use. Berg placed Peynetsa on his witness list, and the government announced its intention to impeach Peynetsa with his prior confession if Peynetsa testified. During the trial, however, Berg's counsel stated that "we have elected not to call Mr. Peynetsa in the defense case in chief." (Trial. Tr. Vol. II at 425.) He then explained as follows:

> [Defense counsel]: I think we had a meeting this morning in chambers where we discussed the fact that Attorney Raj Sing had had contact with Mr. Peynetsa and had been—I do not know if we need to make this—we will just make it part of the record based on our comments here I think is fine. That Mr. Sing did indicate that he had had an opportunity to speak with client and that he was advising Mr. Peynetsa to invoke his fifth amendment rights if called to the stand.[2] In my opinion that basically rendered him likely to be unavailable and if that is the case, then we also

---

[2] By the time Berg's trial began, Peynetsa had already been convicted on a state law cocaine distribution charge but was still awaiting sentencing.

understand the government cannot use any of his written statements as co-conspirator statements because he would not be subject to cross-examination. So given the fact that Mr. Peynetsa was basically useless to both sides at that point, we have now elected simply not to call him.

THE COURT: I understand he had given post-arrest interviews where he implicated your client and—

[Defense counsel]: Yes.

THE COURT:—those are also not admissible.

[Defense counsel]: Correct.

THE COURT: All right.

[Defense counsel]: The government has not offered any of them.

THE COURT: No, and without him testifying there would be no basis. [Prosecutor], do you have anything to add?

[Prosecutor]: No, Your Honor.

THE COURT: This is one of those decisions that sounds strategic but I take it you have discussed it with your client since you have been having—

[Defense counsel]: Yes.

THE COURT:—it seems multiple discussions with your client. He is an active client—

[Defense counsel]: Yes.

> THE COURT:—it appears from the court's vantage point.
>
> [Defense counsel]: Sure.
>
> THE COURT: All right. Good.

(*Id*. at 425-27) (footnote added).

In proceedings on Berg's post-trial motion, Berg argued that his attorney was ineffective for failing to call Peynetsa into court to state whether he actually wanted to invoke his Fifth Amendment rights.[3] Berg also requested a post-trial evidentiary hearing to allow Peynetsa to testify about his intentions. The district court held that Berg's attorney made a reasonable strategic decision not to call Peynetsa and denied Berg's post-trial motion.

Berg does not renew his ineffective assistance claim here. Because Peynetsa's testimony is not in the record, Berg argues that there is not enough evidence to tell whether his attorney was ineffective. Instead, Berg argues that the district judge violated Berg's Sixth Amendment right to compulsory process by failing—both during trial and during post-conviction proceedings—to determine independently whether Peynetsa wanted to testify. Questioning Peynetsa during trial, Berg argues, would have allowed the district judge to determine whether Peynetsa actually would have invoked his

---

[3] Because Peynetsa was represented by counsel, Berg's attorney, as a general matter, could not have spoken to him *outside* of the courtroom, at least not ethically. *See* E.D. Wis. Gen. L.R. 83(d)(1); Wis. R. Prof. Conduct 4.2.

Fifth Amendment rights. And questioning Peynetsa after trial, Berg continues, would have allowed Berg to support his ineffective assistance claim.

We disagree. Berg waived his right to call Peynetsa at trial, and, as we will explain, that waiver extinguished any Sixth Amendment claim Berg might have had. Berg cannot overcome that waiver, and, in any event, his underlying ineffective assistance claim is meritless. Accordingly, the trial court's failures to question Peynetsa— either during or after trial—do not entitle Berg to reversal of his conviction.

*1. Failure to question Peynetsa during trial*

We will start with Berg's argument that the district judge should have independently questioned Peynetsa during trial. As we have already discussed, *see supra* at n.1, the Supreme Court has distinguished between "forfeiture" and "waiver"; "forfeiture is the failure to make the timely assertion of a right," while "waiver is the intentional relinquishment or abandonment of a known right." *See Olano*, 507 U.S. at 733 (internal quotation marks omitted); *accord Tichenor*, 683 F.3d at 363. A forfeited error may still be reviewed on appeal, albeit under the more deferential "plain error" standard. *Olano*, 507 U.S. at 732. "When an issue is waived," however, "we cannot review it at all because a valid waiver leaves no error for us to correct on appeal." *Tichenor*, 683 F.3d at 363 (internal quotation marks omitted). Here, Berg, acting through counsel, clearly abandoned his right to call Peynetsa at trial. Accordingly, Berg waived any Sixth

Amendment claim on this basis, and we cannot consider it on appeal.

Berg also suggests, without citation, that the district judge had an independent duty to determine whether Berg *agreed* with his lawyer's decision not to call Peynetsa. (*See* Appellant's Br. at 29.) At the outset, Berg forfeited this argument by failing to make it in the district court. *See United States v. Taylor*, 471 F.3d 832, 841 (7th Cir. 2006). But in any event, the argument has no merit. "The adversary process could not function effectively if every tactical decision required client approval." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). Thus, "[p]utting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision . . . to decide not to put certain witnesses on the stand." *Id.*; *accord Gonzalez v. United States*, 553 U.S. 242, 249-50 (2008).

That brings us to the core issue: whether Berg's attorney was ineffective for declining to call Peynetsa at trial. While Berg raised this argument in post-trial proceedings, he now argues that there is not enough information in the record to determine his attorney's effectiveness. (Appellant's Br. at 30.) If Berg is correct, that suggests we should leave the question for collateral review under 28 U.S.C. § 2255, which would allow for additional fact-finding. The government, on the other hand, argues that there is already enough evidence in the record to conclude, as a matter of law, that Berg's trial counsel was not unconstitutionally ineffective.

We usually leave ineffective assistance of counsel claims for collateral review. *See United States v. Best*, 426

F.3d 937, 944 (7th Cir. 2005). That said, we will address such claims on direct review if they do not involve extrinsic evidence and "can be fully evaluated only on the record below." *Id.* And, because Berg cannot possibly show that his lawyer's performance was deficient on this record, we think this is one such case.

As discussed, proving ineffective assistance of counsel requires Berg to show that (1) his counsel's performance was deficient; and, (2) that deficiency resulted in prejudice. *See Strickland*, 466 U.S. at 687. To demonstrate that his lawyer's performance was deficient, Berg must show that his lawyer's work "fell below an objective standard of reasonableness." *Id.* at 688. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. As a result, review of counsel's actions is "highly deferential," and we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Berg's attorney reasonably declined to call Peynetsa here. "The Constitution does not oblige counsel to present each and every witness that is suggested to him." *Best*, 426 F.3d at 945. Instead, it simply obliges counsel to investigate the various lines of defense available in a given case. *See Wiggins v. Smith*, 539 U.S. 510, 521-23 (2003). "If counsel has investigated witnesses and consciously decided not to call them, the

decision is probably strategic." *Best*, 426 F.3d at 945. As a result, counsel's decision "to call or not to call a witness" is "generally not subject to review." *Id.*

There can be no doubt that Berg's counsel made a strategic decision not to call Peynetsa—the trial judge specifically observed that this was "one of those decisions that sounds strategic," and Berg's trial counsel agreed. (Trial Tr. Vol. II at 427.) Moreover, that strategic decision was reasonable. As both defense counsel and the trial judge noted, calling Peynetsa would have allowed the government to introduce post-arrest interviews in which Peynetsa implicated Berg. (*Id.* at 426-27.) A reasonable attorney could easily conclude that the harm caused by these interviews would outweigh any benefit from Peynetsa's testimony. Accordingly, Berg cannot show that his attorney performed deficiently.

Nor can he show prejudice. As we have already discussed at length, the evidence here weighed heavily in favor of the government. Moreover, there is little reason to think that Peynetsa's testimony would have tipped the scales back in Berg's favor. Given Peynetsa's apparent intent to invoke his Fifth Amendment rights, he might not have even testified if called. And even if Peynetsa did testify, he was unlikely to be a strong witness; the government could have impeached him with his prior statements implicating Berg. In light of these observations, we do not think that Berg can satisfy either prong of *Strickland*.

*2. Failure to question Peynetsa during post-trial proceedings*

That brings us to our final issue. Berg, in his reply brief in support of his motion for a new trial, asked for an "evidentiary hearing relative to the issues of whether Mr. Peynetsa would have testified."[4] (R. 92 at 7.) Berg never received one, and he argues that this, too, violated his Sixth Amendment right to call witnesses in his defense.

The Sixth Amendment gives a defendant the right to present witnesses in his defense. But that right "is not unlimited" and must "accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). We think that one such legitimate interest is the need for litigants to present their evidence at the proper time and in the proper way. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("the accused, as is required of the State, must comply with established rules of procedure and evidence" in exercising his or her Sixth Amendment rights); *Horton v. Litscher*, 427 F.3d 498, 505 (7th Cir. 2005) (*quoting Rock v. Arkansas*,

---

[4] While Berg asked for an evidentiary hearing in his reply brief in support of his motion, (R. 92 at 7), he did not ask for an evidentiary hearing in his initial motion for a new trial, (*see* R. 89 at 7) (requesting "a new trial . . . [to] determine whether Mr. Peynetsa would testify"). Arguably then, Berg forfeited his right to an evidentiary hearing. *See Solis v. Current Dev. Corp.*, 557 F.3d 772, 777 (7th Cir. 2009) ("The right to an evidentiary hearing can be forfeited if the litigant fails to timely raise the issue[.]"). But the government does not argue forfeiture, so we will address the issue on the merits.

483 U.S. 44, 56 (1987)) (reasonable restrictions on the presentation of evidence "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve'"). Berg could have tried to call Peynetsa at trial. And, had the district court barred him from doing so, Berg could have objected and preserved the issue for appeal. But he did not. Instead, he affirmatively (and, as discussed, reasonably) waived his right to call Peynetsa. In other words, Berg was not denied the opportunity to call Peynetsa. Berg *had* the opportunity to call Peynetsa; he just did not try to use it until well after the time to do so had passed. We do not think that the Sixth Amendment gives defendants a right to affirmatively abandon an issue at trial and then revive the issue after things have not gone their way.

That said, Federal Rule of Criminal Procedure 33(a) provides that a district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Thus, a district court has the *discretion* to reexamine issues not presented at trial, even if the Sixth Amendment does not *require* it to do so. Accordingly, the district court's decision not to hold an evidentiary hearing in this case is reviewable for abuse of discretion. *See United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012) ("We review the denial of a motion for a new trial under Rule 33 for an abuse of discretion."); *United States v. Cornelius*, 623 F.3d 486, 496 (7th Cir. 2010) ("We review the district court's decision not to grant an evidentiary hearing for abuse of discretion.").

We do not think the district court abused its discretion here. As discussed, Berg's ineffective assistance claim cannot succeed because his attorney made a strategic choice not to call Peynetsa. As a result, an evidentiary hearing was unnecessary to resolve the claim, and the district court did not abuse its discretion by declining to hold one.

### III. CONCLUSION

We AFFIRM Berg's conviction.