In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2769

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PATRICK K. DAVIS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 10-CR-245 — **C. N. Clevert, Jr.**, *Judge.*

ARGUED APRIL 11, 2013 — DECIDED AUGUST 1, 2013

Before EASTERBROOK, *Chief Judge*, and MANION and ROVNER,
*Circuit Judges.*

MANION, *Circuit Judge*. Patrick Davis was charged with four
counts of bank robbery and two counts of witness intimidation.
A jury convicted him on three of the bank robbery counts, but
acquitted him of the other crimes. On appeal, Davis seeks a
new trial. He argues that the district court improperly in-

structed the jury and that the two witness intimidation counts should have been tried before a separate jury under Federal Rules of Criminal Procedure 8(a) and 14(a). We disagree, and affirm his convictions.

**I.**

Facts

On November 16, 2010, a federal grand jury returned a four-count indictment alleging that Davis had robbed four banks in violation of 18 U.S.C. § 2113(a). These bank robberies all occurred near Milwaukee, Wisconsin, and were committed in a similar fashion. Surveillance photos from the robberies also suggested that the robberies had been committed by the same individual because the images from the four robberies all showed a male robber with similar facial features who sometimes wore the same clothes. The robberies occurred as follows:

- On December 10, 2005, a man at the Tri-City National Bank in Brookfield, Wisconsin, gave a handwritten note to the teller stating, among other comments, "Important, remain calm"; "I'm armed"; and "I have nothing to lose." The robber escaped with $1,519.

- On January 7, 2006, a man at the Tri-City National Bank in Wauwatosa, Wisconsin, asked the teller for a roll of dimes before giving the teller a handwritten note stating, among other comments, "Don't panic. If you cooperate you won't be hurt." The robber escaped with $3,062.

- On January 12, 2006, a man at the TCF Bank in Shorewood, Wisconsin, asked the teller for a roll of

quarters before giving the teller a handwritten demand note that indicated that the robber was "armed." The robber escaped with $1,023.

- On January 17, 2006, a man at the North Shore Bank in Wauwatosa, Wisconsin, gave a handwritten note to the teller stating that he was "armed." The teller gave the robber cash in small denominations, and the robber moved over to the adjacent window of a second teller and demanded cash in higher denominations. The robber escaped with $2,325.

After the fourth robbery, a witness saw a man resembling the robber walk quickly through a nearby parking lot, enter a white Cadillac CTS with a spoiler, then speedily drive away. Later that night, after a news alert broadcasted surveillance photos of the robbery, an anonymous tipster called the local police and identified Davis as the man in the surveillance photos. The tipster also provided the police with a physical description of Davis, the address and names of Davis's family members, and a description of a white Cadillac CTS owned by Davis's mother, Betty Johnson.

Based on this information, the police conducted a criminal history check and other background checks on Davis, and also obtained a photograph of him. The photograph of Davis resembled the man in the surveillance photos, and the police decided to visit an address mentioned by the anonymous tipster. The address led the police to a duplex that Johnson owned, and the police met Johnson and talked to her about her son. Johnson told the police that Davis was not home at the time, and they informed her about his suspected involvement

in the bank robberies. They also found Johnson's white Cadillac CTS with a spoiler, which Davis had been known to drive. The police left a business card with Johnson and asked her to encourage Davis to get in touch with the police, but Davis never contacted the police. Instead, the police received information suggesting that Davis had fled Milwaukee and had traveled to Omaha, Nebraska.

Just two months after the fourth bank robbery, a woman named Andronika Moore reported to the police that she had been threatened by Davis's family. Moore and her family lived in the duplex owned by Johnson, and Moore's sister was in a serious relationship with Davis's brother at the time. Moore reported that, sometime in February or March, Davis's brother had confronted her, displayed a gun, and accused her of tipping off the police about Davis's alleged involvement in the bank robberies for reward money. About a month later, Johnson argued with Moore two times, and their verbal fights escalated into physical altercations.

Meanwhile, law enforcement continued to search for Davis in Omaha, Nebraska. On April 12, 2006, Davis turned himself in to the FBI office in Omaha and was taken into custody. An FBI agent advised Davis of his rights, and Davis initially expressed an interest in cooperating with investigators, but he later declined to discuss the bank robberies. Law enforcement released Davis from custody in Omaha on April 21, 2006, and he then returned to Milwaukee.

Two days later, in the early morning of April 23, 2006, shots were fired into a truck owned by Moore's husband. Bullets went through the truck's windshield and into a nearby house.

When the police investigated the scene, they recovered bullets and casings, then decided to conduct surveillance on Davis. The next day, on April 24, 2006, law enforcement officers followed Davis as he rode away from his mother's house in a car driven by his brother. The officers stopped the car, arrested Davis, and found a loaded Glock .40 caliber pistol in his possession. The Wisconsin State Crime Laboratories later determined that a bullet and two casings recovered from the shooting of Moore's truck had been shot from this pistol.

Davis was eventually indicted on November 16, 2010, and a superseding indictment was filed on January 19, 2011.[1] This superseding indictment charged Davis with four counts of bank robbery in violation of 18 U.S.C. § 2113(a), and two witness intimidation counts based on the shooting of Moore's truck. Specifically, Count Five charged Davis with witness intimidation by use of physical force in violation of 18 U.S.C. § 2 and § 1512(a)(2)(C), and alleged that Davis had "used physical force against [Moore] by firing a gun at her residence and vehicle with the intent to hinder, delay, and prevent communication of information to a law enforcement officer about the bank robberies described in Counts One through Four of this indictment." Count Six charged Davis with discharging a firearm during and in relation to the witness

---

[1] The briefs do not explain why the government took approximately five years to obtain an indictment. The Presentence Investigation Report indicated that Davis was in prison from July 2007 to April 2011 for a bank robbery conviction in state court, and this imprisonment might have been a factor in the government's timing. Nonetheless, Davis does not make an issue of the delay in his appeal.

intimidation offense in violation of 18 U.S.C. § 2 and § 924(c)(1)(A)(iii), and alleged that Davis had "knowingly discharged a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the offense of witness intimidation charged in Count Five of this indictment, and did posses the firearm in furtherance of such crime." Davis pleaded not guilty to all six counts.

Before trial, Davis moved to sever Counts Five and Six from the first four counts of the superseding indictment. Davis argued that Counts Five and Six were improperly joined under Federal Rule of Criminal Procedure 8(a). Alternatively, even if Counts Five and Six were properly joined, Davis argued that Counts Five and Six should be severed under Federal Rule of Criminal Procedure 14(a) because the two counts would be irrelevant and highly prejudicial to the other four counts. A magistrate judge denied Davis's motion to sever, and the district court judge adopted this ruling over Davis's renewed objection.

As the parties were preparing for trial, the government proposed jury instructions about its burden of proof that relied—almost verbatim—on section 4.01 of the Pattern Criminal Jury Instructions of the Seventh Circuit (2012). The government's proposed jury instructions relied on this pattern instruction for all counts in the superseding indictment, and slightly modified it for each count. For example, the proposed jury instructions for Count Six stated:

> If you find from your consideration of all the evidence that the government proved both of these

elements beyond a reasonable doubt, then you *should* find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that the government failed to prove either of these elements beyond a reasonable doubt, then you *should* find the defendant not guilty.

(Emphases added.)

Davis objected to the use of the word "should" in the last paragraph of these jury instructions. Instead of saying that the jury "should" acquit the defendant if the government failed to prove its case, Davis argued that the instructions should state that the jury "must" acquit the defendant. The government disagreed and wanted to use its proposed instructions because they were based on the pattern instructions. But alternatively, the government argued that if the district court decided to use "must" in the second paragraph, it should also replace the "should" with "must" in the first paragraph. Davis responded that although the court should use "must" in the second paragraph, it should still use "should" in the first paragraph because "[t]he jury always retains the inherent power to chose not to convict the Defendant." The district court rejected Davis's arguments and ruled that it would use the government's initial proposed instructions that use "should" in both paragraphs because they were based on the pattern jury instructions.

The case proceeded to trial. During the trial, Davis renewed his motion to sever Counts Five and Six, and the district court denied his motion. Davis also renewed his objection to the use of the word "should" in the second paragraph of the jury

instructions about the government's burden of proof. Apparently reversing its prior ruling, the district court agreed with Davis this time, and revised its jury instructions by replacing "should" with "must" in both paragraphs.

The district court also used the following jury instruction without controversy:

> Each count of the indictment charges the defendant with having committed a separate offense. Each count and the evidence relating to it should be considered separately, and a separate verdict should be returned as to each count. Your verdict of guilty or not guilty of an offense charged in one count should not control your decision as to any other count.

During the jury deliberations, the jury asked the court for clarification about the distinction between Counts Five and Six, and the district court directed the jury to review its instructions again.

On March 16, 2012, the jury convicted Davis of Counts Two, Three, and Four (three of the bank robbery counts), and acquitted him of Counts One, Five, and Six (the first bank robbery count and the witness intimidation counts). On July 20, 2012, the district court sentenced Davis to 36 months in

prison and 4 years of supervised release.[2] Davis filed a timely notice of appeal.

## II.

### Discussion

Davis raises three issues on appeal. First, he challenges the use of "must" in the jury instructions. Second, he argues that Counts Five and Six were improperly joined to the initial four counts under Federal Rule of Criminal Procedure 8(a). And third, if Counts Five and Six were properly joined, he argues that Counts Five and Six should have been severed under Federal Rule of Criminal Procedure 14(a).

### A. Jury Instructions

Davis argued throughout the trial that the second paragraph of the jury instructions about the government's burden of proof should use the word "must" instead of "should." But when the district court agreed, Davis got more than he bargained for because the court changed the "should" to "must" in both paragraphs. Davis objected to using "must" in the first paragraph because "[t]he jury always retains the inherent power to chose not to convict the Defendant." He continues to make this argument on appeal, and argues that the district court erred by using "must" instead of "should" in

---

[2] Interestingly, Davis spent more time in prison for his bank robbery conviction in state court than he will for his three bank robbery convictions in federal court. The Presentence Investigation Report determined that Davis's recommended guidelines range was 84–105 months in prison, but the district court only sentenced Davis to 36 months in prison. Unsurprisingly, Davis does not challenge his sentence on appeal.

the first paragraph. We review jury instructions de novo to determine whether they "'fairly and accurately summarize the law,' and we will reverse only if the instructions, when viewed in their entirety, so misguided the jury that they led to appellant's prejudice." *United States v. Quintero*, 618 F.3d 746, 753 (7th Cir. 2010) (quoting *United States v. Webber*, 536 F.3d 584, 599 (7th Cir. 2008)).

We have recognized that "[j]ury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant." *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996). Although jury nullification is "a natural and at times desirable aberration under our system, it is not to be positively sanctioned by instructions …." *United States v. Anderson*, 716 F.2d 446, 449-50 (7th Cir. 1983). We have therefore concluded that "explicit instructions sanctioning such action pose too great a threat to the rule of law." *Id.* at 450.

Davis concedes that he is not entitled to give the jury an instruction on jury nullification, but nonetheless wants the jury instructions to reflect the theoretical availability of jury nullification. Jury instructions, however, are not abstract treatises on legal issues; they are instead tailored instructions that state the applicable law in a specific case to aid a jury in reaching its verdict. *See United States v. Hill*, 252 F.3d 919, 922-23 (7th Cir. 2001). We think that it is hardly plausible that a jury would reach a different verdict based on the use of "should" or "must" in this context because both words are imperative when used to instruct a jury on whether to convict a defendant. *Cf. United States v. Kerley*, 838 F.2d 932, 940 (7th

Cir. 1988) (finding no substantive difference between "should" and "must" for jury instructions that instructed a jury on whether to acquit a defendant). Therefore, even though the Seventh Circuit's pattern jury instructions use the word "should," substituting the word "must" in the place of "should" did not alter the jury instruction to Davis's prejudice, and we affirm the district court's jury instructions.

B. Joinder

Davis also argues that Counts Five and Six were not properly joined to the initial four counts under Federal Rule of Criminal Procedure 8(a). Davis objected to the joinder before trial, and we review a defendant's preserved claim of misjoinder under Rule 8(a) de novo. *United States v. Ross*, 510 F.3d 702, 710 (7th Cir. 2007). However, misjoinder requires reversal only if the misjoinder "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 710-11 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)) (internal quotation marks omitted).

Rule 8(a) allows an indictment to include separate counts "if the offenses charged … are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). We interpret this rule broadly to enhance judicial efficiency. *United States v. Berg*, 714 F.3d 490, 494-95 (7th Cir. 2013). Our review is based only on the allegations in the indictment and we do not examine what happened at trial. *Id.*; *Ross*, 510 F.3d at 710 n.1.

The district court concluded that Counts Five and Six (about witness intimidation) were part of the "same scheme or

plan" as the initial four counts (about bank robberies). On appeal, Davis argues that he had no overriding scheme or plan that connected the bank robberies with the witness intimidation counts. He specifically notes that the government never alleged that Davis tampered with other individuals involved in the case.

But Count Five clearly alleged that the witness intimidation was designed to "hinder, delay, and prevent communication of information to a law enforcement officer about the bank robberies described in Counts One through Four of this indictment." Count Six is similarly connected to the first four counts because it was based on "the offense of witness intimidation charged in Count Five of this indictment." The superseding complaint added these two counts because the government alleged that Davis committed four crimes, then engaged in two additional crimes to try and hide his initial crimes. This is a single "scheme or plan," even if Davis just threatened one witness. *See United States v. Warner*, 498 F.3d 666, 699 (7th Cir. 2007) ("[A] conspiracy and its cover-up are parts of a common plan." (quoting *United States v. Velasquez*, 772 F.2d 1348, 1354 (7th Cir. 1985)) (internal quotation marks omitted)); *see also United States v. Balzano*, 916 F.2d 1273, 1279-80 (7th Cir. 1990) (ruling that a witness intimidation count was properly joined with extortion and RICO conspiracy counts). Counts Five and Six were therefore properly joined to the initial four counts.

### C. Severance

Finally, Davis argues that Counts Five and Six, if properly joined, should have been severed under Federal Rule of Criminal Procedure 14(a). Even if counts are properly joined

under Rule 8, Rule 14(a) recognizes that joinder nonetheless "may prejudice either a defendant or the Government." *Zafiro v. United States*, 506 U.S. 534, 538 (1993). Davis moved for Counts Five and Six to be severed before trial, and we review a district court's denial of a motion to sever under Rule 14(a) for abuse of discretion. *Zafiro*, 506 U.S. at 541; *Ross*, 510 F.3d at 710.

Rule 14(a) states: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Trying multiple counts before the same jury "can sometimes be problematic; it runs the risk of producing a verdict based on bad acts and propensity evidence rather than on admissible evidence." *Berg*, 714 F.3d at 496. Unlike with Rule 8(a), we look to the trial proceedings, and will reverse a conviction "only if actual prejudice resulted from the denial of the severance motion, and such prejudice requires that the defendant have been deprived of a fair trial, not merely a better chance at acquittal than an individual trial may have afforded." *United States v. Morales*, 655 F.3d 608, 624 (7th Cir. 2011) (citations omitted); *see also Zafiro*, 506 U.S. at 538-39 ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.").

The district court denied Davis's motion to sever because of the "intimate relationship" between the six counts and the lack of unfair prejudice. On appeal, Davis argues that the

evidence presented on Counts Five and Six had a spillover
effect that prejudiced the jury's judgment on the bank robbery
counts. Specifically, he argues that the government introduced
evidence and had witnesses testify about Davis's allegedly
violent character and his use of firearms. This evidence, he
argues, would not have been introduced into a trial based
solely on the bank robbery counts.

But the jury's verdicts on each count show no evidence of
prejudicial spillover. The jury acquitted Davis on Count One
(the first bank robbery) and also on Counts Five and Six
(witness intimidation). If the evidence and testimony about
guns and Davis's allegedly violent character were so prejudi-
cial that they clouded the jury's judgment, the jury would
likely have convicted Davis of Counts Five and Six. And by
acquitting Davis of the first bank robbery, the jury showed that
it was able to sort through each count individually.

Furthermore, the district court diminished any spillover
prejudice by instructing the jury that "[e]ach count and the
evidence relating to it should be considered separately." *See
Zafiro*, 506 U.S. at 539-41 ("When the risk of prejudice is high,
a district court is more likely to determine that separate trials
are necessary, but… less drastic measures, such as limiting
instructions, often will suffice to cure any risk of prejudice … .
'[J]uries are presumed to follow their instructions.'" (quoting
*Richardson v. Marsh*, 481 U.S. 200, 211 (1987))); *Berg*, 714 F.3d at
496 ("Jury instructions can mitigate potential prejudice from
trying multiple charges together … ."); *United States v. Pacente*,
503 F.2d 543, 548 (7th Cir. 1974) (observing that jury instruc-
tions directing separate consideration of counts are a "mean-

ingful safeguard" against a prejudicial spillover between counts). When the jury was in deliberations and became confused about the distinction between Counts Five and Six, it asked the court for clarification, which further demonstrates that the jury was following its instructions and compartmentalizing the issues in the various counts. The district court therefore did not abuse its discretion when it denied Davis's motion to sever.

## III.

### Conclusion

The district court properly instructed the jury on how to convict and acquit the defendant because the difference between "must" and "should" did not prejudice the defendant in this context. Additionally, the witness intimidation claims were properly joined with the bank robbery claims under Rule 8(a) because the indictment alleged that they were part of Davis's "scheme or plan" to cover up any evidence of his bank robberies. Finally, the district court did not abuse its discretion by declining to sever the witness intimidation counts because the jury was instructed to compartmentalize the issues in this case. We therefore AFFIRM Davis's convictions.