In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3286

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID L. SIMPSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:13-cr-30056-SEM-JEH-1 — **Sue E. Myerscough**, *Judge.*

ARGUED JUNE 7, 2017 — DECIDED JULY 28, 2017

Before RIPPLE, ROVNER, and HAMILTON, *Circuit Judges.*

RIPPLE, *Circuit Judge.* A jury convicted David Simpson of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). He moved for a new trial under Federal Rule of Criminal Procedure 33(a), alleging that his trial counsel had been ineffective by failing to investigate and call three witnesses who had potentially exculpatory evidence. The district court declined to conduct an evidentiary

hearing and denied the motion because it found "no reasonable possibility" that the proposed testimony of these witnesses would have changed the trial's outcome.[1] On appeal, Mr. Simpson argues that the district court abused its discretion by denying his motion without an evidentiary hearing.[2] Because we believe that Mr. Simpson alleged sufficient facts to support an ineffective-assistance-of-counsel claim, we vacate the denial of his motion and remand for an evidentiary hearing.

# I

## BACKGROUND

Mr. Simpson came to the attention of law enforcement when one of his associates, Joe Burdell, was arrested for driving under the influence of heroin and agreed to cooperate with local police in building a case against Mr. Simpson. Roughly one week after his arrest, Burdell alerted the police that he and Mr. Simpson would be driving to St. Louis to buy heroin. The police dispatched an officer to follow them. On their way to St. Louis, Mr. Simpson, Burdell, and an additional passenger, Jade Winchester, made several stops in small towns in southern Illinois to pick up money for the planned heroin purchase. They first went to a junkyard to exchange some scrap metal for cash. They then stopped at a Dairy Queen to collect money from a heroin customer named

---

[1] R.80 at 14.

[2] The district court had jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231.

David Zenner. Finally, they met up with another individual at the intersection of two state roads.

Mr. Simpson, Burdell, and Winchester then drove to an apartment building in St. Louis. According to Winchester's testimony, Mr. Simpson went to an apartment unit and returned with a "sack" of heroin,[3] which was packaged in capsules that Mr. Simpson then transferred to his cigarette case. Burdell also testified that Mr. Simpson bought the heroin capsules in St. Louis and that Mr. Simpson put those capsules into his cigarette case. Both Winchester and Burdell testified that the group then drove to a hotel parking lot, where Burdell and Mr. Simpson shot up heroin.

After leaving the parking lot, the group drove on Interstate 55 to the Staunton exit, where they planned to meet Zenner, the heroin customer who had given Mr. Simpson money hours earlier at the Dairy Queen. Before the group reached Zenner, however, law enforcement officers stopped the group's vehicle. Burdell testified that Mr. Simpson then "threw the cigarette pack underneath [Burdell's] seat," but an officer seized it.[4] The pack bore Mr. Simpson's right thumb print and contained 38 capsules (about 2.3 grams) of heroin. The Government arrested Mr. Simpson and later charged him with possession with intent to distribute heroin.

At trial, the Government presented testimony about these events from Winchester, Burdell, and Zenner. Winchester and Burdell both testified that Mr. Simpson collected money on their way to St. Louis, bought the heroin capsules, and

---

[3] R.48 at 50.

[4] R.49 at 61.

planned to meet Zenner on the return trip. Zenner also testified that he gave Mr. Simpson money to buy heroin. Additionally, the police officer who had tailed the group confirmed each of the stops en route to St. Louis. A deputy U.S. marshal testified that, while accompanying Mr. Simpson out of the courtroom after a pretrial hearing, Mr. Simpson referred to himself as a "low-level drug dealer[]."[5] Records of Mr. Simpson's cell phone communications with his two heroin customers as well as a St. Louis-area number corroborated the stops Mr. Simpson made on the day of his arrest.

Mr. Simpson testified in his own defense. He denied buying heroin in St. Louis and accused Burdell of being the actual buyer. According to Mr. Simpson, when he, Winchester, and Burdell arrived at a St. Louis parking lot, "somebody came out" to give Burdell "some stuff," but Mr. Simpson did not know what it was.[6] According to his testimony, the group then went to a hotel parking lot where Burdell gave him heroin to shoot up. Mr. Simpson acknowledged that the cigarette case was his, but said that he gave it to Burdell roughly twenty minutes before they were pulled over so that Burdell could get a cigarette, and that, at that time, the case did not contain heroin.

After the jury found Mr. Simpson guilty, his trial counsel moved to withdraw, citing "irreconcilable differences" with Mr. Simpson.[7] The district court granted the motion. Mr. Simpson's new attorney timely moved for a new trial,

---

[5] *Id.* at 168.

[6] *Id.* at 221.

[7] R.43 at 3–4.

claiming that Mr. Simpson's trial counsel had been ineffective. Specifically, the motion cited: (1) trial counsel's failure to interview and call three witnesses with potentially exculpatory evidence (Mr. Simpson's mother, Donna Simpson; and two of his acquaintances, Jacqueline Lintzenich and Zachary Hoffstot, who previously had accompanied Burdell and Mr. Simpson on trips to buy drugs); (2) trial counsel's failure to effectively cross-examine the Government's witnesses (Burdell, Winchester, and Zenner); (3) trial counsel's inaccurate assessment of the Government's case, including advising Mr. Simpson to reject a plea bargain; and (4) trial counsel's failure to prepare Mr. Simpson to testify, i.e., by not discussing his testimony with him or alerting him that he would be subject to cross-examination.

In support of the motion for a new trial, Mr. Simpson attached an affidavit asserting that he had told his trial counsel that he wanted to call his mother, Lintzenich, and Hoffstot to testify, but that his counsel did not contact them. He also submitted notarized letters from the three potential witnesses. Donna Simpson stated that Burdell told her at the time of Mr. Simpson's arrest that Mr. Simpson was "tak[ing] the rap for [Burdell] and [Winchester]."[8] Lintzenich also heard Burdell and Winchester say that Mr. Simpson "took the wrap [sic] for purchasing the [h]eroin."[9] She also stated that she never saw Mr. Simpson sell heroin or buy drugs on other "[d]rug runs" with Burdell and asserted that, in the past, Mr. Simpson

---

[8] R.70-1 at 1.

[9] R.70-2 at 1.

had "purchased [h]eroin for personal use only."[10] Hoffstot stated that he had witnessed "Burdell buying the [h]eroin" on other trips to St. Louis and that Mr. Simpson did not "deal[]" heroin.[11]

After considering this evidence, the district court denied the motion for a new trial and declined to hold an evidentiary hearing on Mr. Simpson's motion. The court concluded that Mr. Simpson was "not entitled to an evidentiary hearing because he ha[d] not alleged sufficient facts to show that he suffered prejudice from his counsel's alleged trial errors."[12] Regarding his trial counsel's failure to interview Donna Simpson, Lintzenich, and Hoffstot, the court explained that any testimony repeating the contents of their letters would be inadmissible because it would be either irrelevant or hearsay.

The court later sentenced Mr. Simpson to eight years' imprisonment and six years' supervised release. Mr. Simpson timely appeals.[13]

## II

## DISCUSSION

On appeal, Mr. Simpson contends that the district court erred in denying his request for an evidentiary hearing in connection with his motion for a new trial. Such a hearing,

---

[10] *Id.*

[11] R.70-3 at 1.

[12] R.80 at 13.

[13] Our jurisdiction is premised on 28 U.S.C. § 1291.

Mr. Simpson asserts, would have allowed him to develop evidence demonstrating that (1) his trial counsel's performance fell below an objective standard of reasonableness by not contacting Donna Simpson, Lintzenich, and Hoffstot; and that (2) he would have been found not guilty if his trial counsel had called the three proposed witnesses. *See Strickland v. Washington*, 466 U.S. 668 (1984). Mr. Simpson also contends that a hearing would have "fully flesh[ed] out" the circumstances under which Burdell made his "taking the rap" statements to Donna Simpson and Lintzenich,[14] which he asserts might be admissible as present sense impressions, *see* Fed. R. Evid. 803(1), excited utterances, *see* Fed. R. Evid. 803(2), or as "statements of an 'unavailable' declarant speaking contrary to his interest," *see* Fed. R. Evid. 804(b)(3).[15]

We review the district court's decision not to hold an evidentiary hearing for abuse of discretion. *United States v. Berg*, 714 F.3d 490, 501 (7th Cir. 2013). In the ordinary course, we "leave ineffective assistance of counsel claims for collateral review." *Id.* at 499. But when a defendant raises an ineffective assistance claim in a motion for a new trial, "typically," that claim "is addressed by holding an evidentiary hearing for the trial court to consider the evidence of the trial counsel's deficiency and its possible effect on the outcome." *United States v. Malone*, 484 F.3d 916, 919 (7th Cir. 2007). As we have explained in the habeas context, "[i]neffective assistance claims often require an evidentiary hearing because they frequently allege facts that the record does not fully disclose." *Osagiede v. United*

---

[14] Appellant's Br. 21.

[15] *Id.* at 21–24.

*States*, 543 F.3d 399, 408 (7th Cir. 2008). A district court, however, does not abuse its discretion by declining to hold a hearing when "there is no reason to suppose that a hearing would produce evidence justifying the grant of a new trial." *United States v. Taglia*, 922 F.2d 413, 419 (7th Cir. 1991). Mr. Simpson's motion for a new trial therefore must establish that a hearing may have yielded evidence showing that (1) his trial lawyer's performance "fell below an objective standard of reasonableness"; and that (2) there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687–88, 694.[16]

We agree with Mr. Simpson that the district court erred in concluding that he did not allege a colorable ineffective-assistance-of-counsel claim. Regarding the first *Strickland* prong, a hearing might have produced evidence, consistent with Mr. Simpson's affidavit, that his trial counsel did not communicate with Mr. Simpson's proposed witnesses.[17] We recognize that "[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him." *Berg*, 714 F.3d at 499 (quoting *United States v. Best*, 426 F.3d 937, 945

---

[16] Federal Rule of Criminal Procedure 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Although the Rule does not define 'interest of justice,' a violation of a defendant's Sixth Amendment right to the effective assistance of trial counsel constitutes a 'substantial legal error' such that a new trial is warranted." *United States v. Arny*, 831 F.3d 725, 730–31 (6th Cir. 2016); *see also United States v. Mahmood*, 820 F.3d 177, 190 (5th Cir. 2016) (reviewing Rule 33 motion predicated upon an ineffective assistance of counsel claim).

[17] The Government does not challenge this contention. *See* Gov't's Br. 20–34.

(7th Cir. 2005)). Defense counsel, however, must "investigate the various lines of defense available in a given case." *Id.* (citing *Wiggins v. Smith*, 539 U.S. 510, 521–23 (2003)). "If counsel has investigated witnesses and consciously decided not to call them," we have held that the trial counsel's "decision is probably strategic." *Best*, 426 F.3d at 945. The record before us, however, does not indicate whether Mr. Simpson's defense counsel contacted these witnesses. Failure to conduct any investigation regarding the potentially exculpatory witnesses certainly would constitute deficient performance. *See Hall v. Washington*, 106 F.3d 742, 750 (7th Cir. 1997) (concluding that an attorney's performance is deficient when "a defendant provides the names of possible mitigation witnesses" and the attorney does not "determine for himself whether their testimony would be helpful").

Regarding the second prong, the district court also erred in concluding that the witnesses' testimony could not have affected the trial's outcome. Both Donna Simpson and Lintzenich claimed that they heard Burdell (or Burdell and Winchester, according to Lintzenich) say that Mr. Simpson was taking the "rap" for the two other passengers.[18] The district court determined that this testimony would not have impacted the trial's outcome because no hearsay exceptions applied to the proposed testimony and therefore the statements would have been inadmissible at trial. This is problematic for two principal reasons: first, the district court acknowledged that the testimony would have been admissible as a prior inconsistent statement, albeit for the limited purpose of impeaching the witnesses. Fed. R. Evid. 613; *see United States v. Smith*, 831 F.3d

---

[18] R.70-1 at 1; R.70-2 at 1.

793, 800–01 (7th Cir. 2016). As impeachment evidence, this testimony could have had a meaningful impact on the outcome of the case because Burdell and Winchester were the *only* people who could link the heroin to Mr. Simpson, and they also benefited from that link because they were the only other occupants of the vehicle. *See Moffett v. Kolb*, 930 F.2d 1156, 1163 (7th Cir. 1991) (finding prejudice in a habeas corpus action when trial counsel did not impeach key witness testimony).

The district court's conclusion also is problematic because an evidentiary hearing could have allowed for further inquiry into whether the statements were admissible as either present sense impressions or excited utterances. Mr. Simpson asserts that the statements likely would be admissible under these exceptions to the hearsay rule "because of the timing of the statements."[19] For example, Donna Simpson's letter indicates that Burdell told her that Mr. Simpson was "taking the rap" for him "during Simpson's arrest or immediately after the search of Donna Simpson's house."[20] This suggests that the statement was made "without calculated narration," as required under the present sense exception. *United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001). Lintzenich's letter similarly suggests that Burdell and Winchester made the "taking the rap" statements while observing DEA agents search Mr. Simpson's home. This short timeframe also suggests that the statements may be admissible as an excited utterance because Burdell and Winchester did not engage in "conscious reflection" before making the statements. *United States v.*

---

[19] Appellant's Br. 21.

[20] *Id.*

*Moore*, 791 F.2d 566, 572 (7th Cir. 1986). The current record, however, lacks sufficient information to assess whether these statements would satisfy either exception; an evidentiary hearing is required to provide the district court with the necessary information to make these determinations.[21]

We also disagree with the district court's determination that Lintzenich's and Hoffstot's proposed testimony about other trips to St. Louis would not have been admissible. In their submissions, Lintzenich and Hoffstot stated that they would have testified about other trips to St. Louis where Burdell purchased the heroin and Mr. Simpson only used heroin. The district court determined that this testimony would not have been admissible at trial because it was irrelevant. We respectfully disagree. While it is true that testimony about whether Mr. Simpson purchased or sold heroin on *other* occasions would not have counteracted evidence regarding whether Mr. Simpson purchased heroin in St. Louis on the night in question, this evidence could have been used to support Mr. Simpson's theory of the case (that Burdell was the drug dealer and Mr. Simpson only *used* drugs). It also could have been used to impeach Burdell's and Winchester's testimony that the group previously had made similar trips to St. Louis where Mr. Simpson purchased heroin.

Finally, the district court erred in considering each alleged error or piece of evidence piecemeal, rather than considering the cumulative effect of the potential testimony. *See Hough v.*

---

[21] The above analysis remains unchanged despite Donna Simpson's recent death. On remand, Mr. Simpson shall have the opportunity to question Lintzenich, Burdell, and Winchester about the "taking the rap" statements.

*Anderson*, 272 F.3d 878, 891 n.3 (7th Cir. 2001) ("Although a specific error, standing alone, may be insufficient to undermine the court's confidence in the outcome, multiple errors together may be sufficient."); *see also Goodman v. Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006). Because the cumulative effect of this additional evidence may have had a significant impact on whether the jury viewed Burdell and Winchester as credible, we conclude that the district court abused its discretion when it did not hold an evidentiary hearing before denying Mr. Simpson's new trial motion.

**Conclusion**

Because the district court did not hold an evidentiary hearing regarding Mr. Simpson's ineffective assistance of counsel claim, it was unable to develop issues of fact concerning the trial counsel's investigation of potential exculpatory witnesses. On remand, the district court should resolve these issues. On the basis of its findings, the court then should determine whether Mr. Simpson's motion for a new trial under Federal Rule of Criminal Procedure 33(a) should be granted. Accordingly, we vacate the district court's denial of Mr. Simpson's motion for a new trial and remand for an evidentiary hearing on this motion.

VACATED and REMANDED