In the

# United States Court of Appeals
## for the Seventh Circuit

_____

No. 21-1279

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALEXANDER KAWLESKI,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 19-cr-25 — **James D. Peterson**, *Chief Judge*.

_____

ARGUED FEBRUARY 8, 2022 — DECIDED JULY 19, 2024

_____

Before SYKES, *Chief Judge*, and SCUDDER and JACKSON-AKIWUMI, *Circuit Judges*.

SYKES, *Chief Judge*. Alexander Kawleski sexually assaulted the adolescent daughter of his then-girlfriend and recorded his crime as he committed it. He stored the video on a flash drive along with more than a dozen other videos he had surreptitiously recorded of the girl undressing and taking a shower. A few years later, Kawleski's new girlfriend

discovered the videos on the flash drive and contacted law enforcement.

Kawleski faced state charges for the assault; a federal grand jury also indicted him for producing and possessing child pornography in violation of 18 U.S.C. §§ 2251(a), 2252(a)(4). His use of the flash drive—a storage device that had traveled in interstate commerce—supplied the jurisdictional element of the federal offenses. Key evidence at trial included testimony from Tracy Brown, the girlfriend who entered the picture later and discovered the videos on the flash drive. Brown testified that in January 2019, she found the flash drive next to Kawleski's computer, plugged it in, saw the videos, and immediately turned the device over to the police. The jury found Kawleski guilty.

Before sentencing Kawleski moved for a new trial. *See* FED. R. CRIM. P. 33. He cited newly discovered evidence—namely, posttrial statements from an ex-boyfriend of Brown's who questioned her credibility. Based on two conversations with Brown, the ex-boyfriend theorized that she, not Kawleski, might have transferred the videos to the flash drive. The district judge denied the motion, explaining that the ex-boyfriend's statements would be admissible, if at all, only for impeachment and were not likely to lead to an acquittal.

Kawleski challenges that ruling. He argues that the judge mischaracterized the ex-boyfriend's statements as "impeachment only" evidence; alternatively, he claims that the posttrial statements are important enough to warrant a new trial *even if* admissible only for impeachment. In a cursory fallback argument, Kawleski asks us to remand for an evidentiary hearing. We reject these arguments and affirm.

## I. Background

On the morning of January 24, 2019, Tracy Brown went to the police department in Wisconsin Rapids, Wisconsin, and asked to speak to a detective. She was distraught and appeared to have been crying. Detective David Bailey met with her, and she gave him a flash drive that she had discovered that morning at the home of Alexander Kawleski, her off-and-on boyfriend. The flash drive contained sexually explicit videos of adolescent girls.

As Brown later testified at trial, she had spent the night before at Kawleski's home. On the morning of January 24, after he left for work, she began looking for evidence that he might be cheating on her. In a cup near his computer, she found several flash drives. Some of them looked familiar, but one did not, so she took it to her house to examine it. When she got home, she called a friend on FaceTime and they viewed the contents of the flash drive together. It contained a video of Kawleski sexually assaulting an unconscious adolescent girl and multiple additional videos of the girl showering in the bathroom of the home where Kawleski had lived a few years earlier. Brown recognized the girl as the daughter of Kawleski's former girlfriend. One of the bathroom videos also showed another adolescent girl in the shower, but Brown did not recognize her.

Detective Bailey viewed the contents of the flash drive. He located the assault video, which bears the file name "00015" and shows Kawleski sexually assaulting A.M., an adolescent girl the detective recognized from his service as a school resource officer at a local school. More specifically, video 00015 shows Kawleski providing alcohol to A.M. in the living room of his home. She appears heavily intoxicated and eventually

passes out. The video then captures Kawleski sexually assaulting her: he lifted her shirt, removed her pants, and performed several sex acts on her.

The flash drive also contained 14 additional videos of A.M. in the bathroom of Kawleski's home, undressing and taking a shower. One of the bathroom videos shows a second adolescent girl, K.H., also taking a shower; the detective recognized her too from his tenure as a school resource officer. The evidence does not pinpoint the dates when the original recordings were made, but the videos had obviously been edited and their "file" dates on the flash drive reflect a date range between 2013 and 2015.

Based on the contents of the flash drive, Detective Bailey obtained a warrant to search Kawleski's home. As the detective recounted in his trial testimony, he discovered a two-way mirror leaning up against a wall in Kawleski's basement. In a subsequent search of Kawleski's prior residence, —where he lived during the period of 2013 through 2015—the detective discovered evidence that the two-way mirror had been mounted in the bathroom on an interior wall with a bedroom on the other side. The two-way mirror, mounted in this spot, would have given a voyeur/photographer visual access to the bathroom from the bedroom. The investigation did not recover the recording device (or devices) that Kawleski used to make the videos.

Based on the 00015 video, a grand jury sitting in the Western District of Wisconsin indicted Kawleski for production of child pornography in violation of § 2251(a). A superseding indictment added 14 counts of attempted violation of the same statute (based on the bathroom videos) and one count of

possession of child pornography in violation of 18 U.S.C. § 2252(a)(4) (based on the assault video).

As we've noted, the government's case at trial included testimony from Detective Bailey and Tracy Brown. The government also called A.M. and K.H., who confirmed that they lived or periodically spent the night at Kawleski's home during the timeframe of 2013 to 2015. They also confirmed that they were under the age of 18 during that period. (A.M. was between the ages of 15 and 17; K.H. was between 14 and 16.) Unsurprisingly, A.M. did not recall the assault, and of course the girls were unaware that they were being surreptitiously recorded while in the shower. Finally, the government called a representative of the company that manufactured the flash drive; he testified that the device was made in New Jersey.

The jury returned verdicts of guilty on all counts. Kawleski moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. Alternatively, he sought a new trial under Rule 33, citing newly discovered evidence. The latter motion included a request for an evidentiary hearing at which the defense could present its new evidence to the court.

The judge granted the Rule 29 motion in part, entering judgment of acquittal on the 14 counts of attempted production of child pornography (pertaining to the bathroom videos); he denied the motion on the remaining counts. The judge also denied the Rule 33 motion, though without prejudice subject to an evidentiary hearing to explore the grounds for Kawleski's request for a new trial.

Kawleski's Rule 33 motion rested primarily on posttrial statements from Jeremy Cecil, Tracy Brown's ex-boyfriend.

To understand the basis for the motion requires a brief detour into the elements of the relevant child-pornography crimes. Recall that two convictions remained after the partially successful Rule 29 motion: production of child pornography in violation of § 2251(a) (count one); and possession of child pornography in violation of § 2252(a)(4)(B) (count sixteen). Both crimes related to the assault video.

Section 2251(a) makes it a federal crime to engage in any conduct that "employs, uses, persuades, induces, entices, or coerces any minor to engage in … any sexually explicit conduct for the purpose of producing any visual depiction of such conduct," but only if the visual depiction has some connection to interstate commerce. The interstate commerce connection is satisfied if the visual depiction was transmitted in interstate commerce (typically on the internet) or "was produced or transmitted using materials" that have been transported in interstate commerce. § 2251(a). We have held that the process of "production" can include the transfer of digital videos and images to a storage device like a flash drive. *United States v. Foley*, 740 F.3d 1079, 1082–83 (7th Cir. 2014). The possession form of the offense also contains an interstate-commerce element. *See* § 2252(a)(4)(B) (prohibiting the possession of any visual depiction of a minor engaging in sexually explicit conduct that was "produced using materials which have been … transported [in interstate commerce]"). Kawleski's transfer of the video files to the flash drive supplied the factual basis for the interstate commerce element for both crimes; the flash drive was manufactured in New Jersey.

Returning to our narrative, shortly after Kawleski's trial, Cecil contacted the U.S. Attorney's Office, identified himself as Brown's ex-boyfriend, and claimed to have information

that undermined her trial testimony. Detective Bailey interviewed him, and Cecil recounted a conversation with Brown in the summer 2018 in which she told him that Kawleski had given her an old "Apple Tower" computer and that she had found images of Kawleski with underage girls stored on the computer. Detective Bailey asked Cecil if he had ever discussed a flash drive with Brown. Cecil replied that the only time he had spoken with Brown about a flash drive was after Kawleski's trial. He was vague about this more recent conversation, recalling only that Brown had mentioned that an issue with a flash drive had come up at trial. As reported in the detective's summary of the interview, Cecil "believes that Tracy copied the videos from the Apple Tower computer" to the flash drive but admitted that he had no evidence to support this theory; it was "simply his opinion."

After the interview with Detective Bailey, Cecil met with one of Kawleski's attorneys. As recounted in the attorney's memo summarizing this meeting, Cecil gave a somewhat different version of the phone call with Brown about the Apple computer. He said the conversation occurred in 2016, not 2018. He also said that Brown had told him the Apple computer contained files with images of Kawleski's "stepdaughter" (apparently a reference to A.M.) "flashing" him. And in this telling, Cecil's account of his more recent conversation with Brown differed sharply from his statement to Detective Bailey. In his interview with Kawleski's attorney, Cecil reported that when he talked with Brown after the trial, she said the flash drive had been in her possession for "a long time." Cecil claimed that he then confronted Brown directly, accusing her of transferring files from the Apple computer to the flash drive. She responded (again, according to Cecil, as recorded in the defense attorney's summary): "[W]ell, it doesn't

matter, he is still guilty." Cecil also described Brown as "vin-dictive."

After interviewing Cecil, Kawleski's attorneys sent an investigator to question Amanda Hintz, Cecil's girlfriend around the time of his conversation with Brown about the Apple computer. Hintz recalled that Cecil received a phone call from Brown sometime in July 2016, but she had no details about it because she was in the house and he was outside when he took the call. After he hung up, Cecil gave her only a vague description that the call had something to do with Kawleski. Hintz also reported that Brown had called her in early 2019 on the day she took the flash drive to police; she was crying and said she had found "inappropriate stuff belonging to Alex." As the investigator recounted in his memo to defense counsel: "[Hintz] said Tracy told her she had earlier purchased a flash drive and now needed it for something," and "when she plugged the flash drive into the computer she discovered the child pornography." Brown told Hintz that she then contacted the Wisconsin Rapids police and "turned the flash drive over to them." As Hintz described the call to the investigator, Brown called her that day because she felt "sick" about what Kawleski had done and "did not know how to handle the situation."

In response to Cecil's statements about the Apple computer, a Wisconsin Rapids detective reinterviewed Brown. She told the detective that the old computer, which she described as looking "like an old tube TV," had been sitting unused in Kawleski's living room and taking up space. At one point she attempted to power it up, but it was password protected and she was never able to view its contents. She tried to recycle it at Best Buy, but the store wouldn't take it, so she

stored it in her garage until January 2019, when she turned it over to the police in connection with the Kawleski investigation. Detective Bailey confirmed that on January 25, 2019—the day after Brown turned in the flash drive—she returned to the police department with the Apple computer, and it remained in police custody.

The judge was not convinced that these posttrial developments warranted a new trial. As he explained in his initial ruling denying the Rule 33 motion, the statements from Cecil and Hintz would be admissible only for impeachment purposes (if at all), and new impeachment evidence ordinarily is not a sufficient basis to grant a new trial. Nor had Kawleski shown that he would probably be acquitted based on the new evidence. But the judge ruled that Kawleski had presented enough new evidence to justify an evidentiary hearing. So he denied the Rule 33 motion without prejudice and granted the request for an evidentiary hearing.

Detective Bailey then asked the Wisconsin State Police to conduct a forensic examination of the Apple computer. The forensic examiner did not find evidence of child pornography or any other questionable or illegal images or videos on the computer. The forensic examiner also reported that the videos and images stored on the computer were last modified in 2009.

Based on the results of the forensic examination, the government asked the judge to reconsider his decision to order an evidentiary hearing. The judge did so. He began by noting that Kawleski had not submitted a sworn declaration or affidavit from Cecil. Assuming for argument's sake that Cecil's unsworn posttrial statements accurately reflected what he would say if under oath, the judge now concluded that an

evidentiary hearing was not necessary. At most, Cecil's statements would be admissible for only impeachment purposes; his theory that Brown had transferred the assault video from the Apple computer to the flash drive was nothing more than speculation; and the theory had been conclusively refuted by the results of the forensic examination of the computer.

The case then proceeded to sentencing. The judge sentenced Kawleski to 18 years in prison on the conviction for production of child pornography and a concurrent 10-year term on the conviction for possession of child pornography.

## II. Discussion

On appeal Kawleski challenges only the denial of his motion for a new trial. We review the judge's decision deferentially and will reverse only if we find an abuse of discretion. *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005). Rule 33 provides that a district judge may grant a new trial on the defendant's motion if the "interest of justice so requires." When a Rule 33 motion is premised on newly discovered evidence, we have held that the defendant must demonstrate that the evidence "(1) was discovered after trial, (2) could not have been discovered sooner through the exercise of due diligence, (3) is material and not merely impeaching or cumulative, and (4) probably would have led to acquittal." *United States v. O'Malley*, 833 F.3d 810, 813 (7th Cir. 2016).

Implicit in the third and fourth steps of this framework is a requirement that the defendant must show that the new evidence would be admissible at a new trial. *United States v. Kamel*, 965 F.2d 484, 491 (7th Cir. 1992). The dispute here centers on the third and fourth steps in the analysis—specifically, whether and for what purpose the new evidence would be

admissible at a new trial and whether an acquittal would be likely with the new evidence in the mix.[1]

Our analysis begins with the hearsay rule, which would block the admission of the statements from Cecil and Hintz recounting their prior conversations with Brown. *See* FED R. EVID. 801(c), 802. This new evidence could possibly be used to impeach Brown's testimony. *See id.* R. 613 (explaining the rules for impeaching a witness with her prior inconsistent statements). But as we've noted, new impeachment evidence ordinarily does not justify a new trial.

Acknowledging these shortcomings, Kawleski argues for the first time on appeal that Brown's statements to Cecil and Hintz would be admissible at a new trial under the "excited utterance" exception to the hearsay rule. Under Rule 803(2) of the Federal Rules of Evidence, an out-of-court statement may be admitted for its truth if the statement "relat[es] to a startling event or condition" and is "made while the declarant was under the stress of excitement that it caused." To qualify, the statement must have been made contemporaneously with the excitement caused by the startling event. *United States v. Boyce*, 742 F.3d 792, 798 (7th Cir. 2014). Additionally, "the trial court must be able to determine that the declarant's state of mind at the time that the statement was made precluded

---

[1] The government briefly argues that the new evidence—the posttrial statements from Cecil and Hintz—is not "newly discovered" because Kawleski certainly knew if he was *not* the person who transferred the videos to the flash drive and could have cross-examined Brown about whether she had done so. It's true, as the district judge noted, that this line of cross-examination was available at trial. But that does not mean that the statements from Cecil and Hintz, which surfaced posttrial, were not "newly discovered."

conscious reflection on the subject of the statement." *United States v. Joy*, 192 F.3d 761, 766 (7th Cir. 1999).

This argument is new on appeal and thus was forfeited, but the government has not relied on forfeiture. Regardless, the argument is meritless. Kawleski did not make a sufficient evidentiary showing to support the admission of Brown's out-of-court statements to Cecil and Hintz under the excited-utterance exception.

The two memos memorializing Cecil's posttrial interviews—Detective Bailey's police report and the memo from Kawleski's attorney—contain no information about Brown's mental state during the conversations he recounted. And the defense investigator's memo about his interview with Hintz addresses Brown's state of mind only tangentially. According to the investigator, Hintz said that Brown called her after she turned the flash drive over to the police because she was upset and felt "sick" about what Kawleski had done. That's not an adequate foundation for the excited-utterance exception. It's not enough that Brown was crying and upset when she called Hintz; there must be evidence that her call was contemporaneous with her discovery of the child pornography and that she was experiencing such emotional distress from the shock of that discovery that her statements were not the product of conscious reflection. We don't have that here. Brown called Hintz *after* she turned the flash drive over to the police.

Kawleski argues in the alternative that new "impeachment only" evidence can sometimes be sufficient to warrant a new trial. That's true in principle. Our caselaw establishes a general framework for applying the abstract "interest of justice" standard in Rule 33; it's not a code or set of categorical rules. *See United States v. Taglia*, 922 F.2d 413, 415 (7th Cir.

1991). Still, "it will be the rare case in which [new] impeaching evidence warrants a new trial." *Id*. And we agree with the district judge that Kawleski's new impeachment evidence is not so powerful that a new trial would probably result in an acquittal.

Cecil's two posttrial statements—one to the detective, the other to the defense attorney—were inconsistent about the timing and contents of his conversations with Brown, limiting their utility as impeachment evidence. And Hintz's recollection of her conversation with Brown was more corroborating than impeaching. She told the defense investigator that Brown had called her after she turned the flash drive over to the police, upset about what Kawleski had done. This part of Hintz's statement *bolsters* Brown's trial testimony. Another part of Hintz's statement might have some impeachment value: as Hintz recalled the conversation to the investigator, Brown told her that she had "earlier purchased a flash drive and now needed it for something," so "she plugged it into the computer" and discovered the child pornography. This is inconsistent with Brown's testimony that she was looking for evidence that Kawleski was cheating on her when she found the flash drive.

In the end, however, even if we assume that the posttrial statements from Cecil and Hintz would have some limited value as impeachment, Kawleski's Rule 33 motion essentially seeks an opportunity to recast his defense around Cecil's theory that Brown found the assault and bathroom videos on the Apple computer and transferred them to the flash drive. That theory is pure speculation, as the district judge explained, and the forensic examination of the Apple computer refutes it. The forensic investigation found no evidence of child

pornography or other files of interest on the computer; the examiner also determined that no files on the computer had been altered since 2009. This is consistent with Brown's claim that she was unable to access the computer's contents because of its password protection.

Moreover, the record reflects that Kawleski vigorously cross-examined Brown at trial, highlighting areas of implausibility and inconsistency in her testimony. He now wants to use the posttrial statements from Cecil and Hintz to set up a new defense that Brown found the pornographic videos on the Apple computer and transferred them to the flash drive. But the forensic examination of the computer makes his proposed new defense nonviable, so Kawleski has not and cannot show that the new evidence probably would result in an acquittal. The judge's Rule 33 ruling was sound.

The judge was also well within his discretion to revisit and reverse his initial order regarding Kawleski's request for an evidentiary hearing on the motion. It's not an abuse of discretion to decline to hold a hearing when "there is no reason to suppose that a hearing would produce evidence justifying the grant of a new trial." *United States v. Simpson*, 864 F.3d 830, 834 (7th Cir. 2017) (quoting *Taglia*, 922 F.2d at 419). And there is no reason here to suppose that an evidentiary hearing would uncover any additional evidence that would substantiate Cecil's claims or overcome the import of the forensic examination of the Apple computer. Accordingly, a remand for an evidentiary hearing in this case is unwarranted. The district judge handled this case—and in particular, the posttrial motions—carefully and well.

AFFIRMED